Hear you, hear you, hear you. The United States Court of Appeals, Joseph Serkis, announces the Court of Law. God save the United States and the Son of the Lord. Please be seated. Good morning. Ladies and gentlemen, welcome to the Fifth Circuit Court of Appeals. We have two cases to be submitted today on oral argument, beginning with United States v. Louisiana. Good morning, Your Honors, and may it please the Court. I'm Dustin Talbott representing Bush-Surreal, who is serving a 120-month statutory maximum sentence based on the District Court's classification of his prior conviction for Louisiana aggravated battery as a crime of violence under the sentencing guidelines. The issue before this Court is whether Louisiana aggravated battery is a crime of violence under Borden, even though it is a general intent crime that under this Court's decision in Garner can be committed recklessly or negligently. After the briefing in this case, another panel of this Court issued an unpublished decision in United States v. Alvin Portery that does much of the work in this case. First, Portery held that the previous cases from this Court that interpreted Louisiana aggravated battery, the cases of Moore and Herrera-Alvarez, are no longer good law. Second, Portery held that Louisiana aggravated battery is a general intent crime that can be committed recklessly or negligently under this Court's decision in Garner. Portery does help the government on the question of realistic probability. It does, Your Honor. The Portery panel declined to reverse the sentence in Portery, finding that Mr. Portery's proposed actual cases did not show a realistic probability that Louisiana aggravated battery can be committed recklessly or negligently. The Portery panel rejected three cases, State and T.M., Edwards, and Weatherby. Mr. Surreal is before this Court with a different actual case proposed, and he proposes the Louisiana Supreme Court case of State v. Howard. Your Honors, there are two ways this Court can side in favor of Mr. Surreal. The first and easiest way is to follow the Portery guidance, but then find that Mr. Surreal has met the actual case requirement by showing a realistic probability that Louisiana aggravated battery reaches less than intentional conduct based on the facts of Howard. Alternatively, and the one that's most true to the actual case requirement in Castillo-Rivera and Duane S. Alvarez, is to find that the legal holding of Howard, which is a Louisiana Supreme Court case, is sufficient to find a realistic probability that Louisiana aggravated battery reaches less than intentional conduct without the need for this Court to make its own determination about what Mr. Howard did, the actual facts of that case. So I'll start with the first and easiest way for this Court to rule in favor of Mr. Surreal, and that's the facts of the Howard decision. The defendant in Howard got into an altercation with his girlfriend, and she was seated in a vehicle, and Mr. Howard had a .25 revolver in his left hand, and with his right hand, he reached into the vehicle and grabbed his girlfriend by the shoulder and attempted to pull her out. And when she pulled back suddenly, the firearm accidentally discharged and struck his girlfriend. And at the trial in Howard, both Mr. Howard and his girlfriend testified that he did not intend to shoot her and that the discharge of the firearm was accidental. And the appeals court in Louisiana reversed his aggravated battery conviction and found that because he, you know, did not intend to fire the gun, that the discharge was accidental, that he couldn't be convicted of aggravated battery and instead imposed a judgment of simple battery. And the Louisiana Supreme Court reversed and reinstated the aggravated battery conviction because it held that Louisiana aggravated battery is a general intent crime under Louisiana law, and general intent crimes are unconcerned with the mental state of the defendant. It does not matter that Mr. Howard intended or didn't intend to fire the firearm. All that mattered is would a reasonable person in Mr. Howard's shoes understand that a probable result of reaching into a car and grabbing someone and having a loaded firearm in your other hand would be that the firearm might be charged. And the Howard decision says, yes, that's a reason, there's a reasonable probability of that result. Did the Portery case address Howard at all? The Portery case does not. Portery does cite to Howard, but it cites to it only for the proposition that aggravated battery is a general intent crime, which is, which is Howard's the Seminole Supreme Court case for that. But Howard was not presented in Portery as an actual case showing that, that the statute reaches less than intentional conduct. I was the attorney in Portery as well, and in the briefing I submitted those three cases as the actual cases, Henry T.M., Weatherby, and Edwards. After the oral argument in Portery, that's when Mr. Surreal's briefs were due, and that oral argument helped inform me that there was a better case to present as an actual case, and that was the Howard case, and that's why this briefing focused more on Howard. And so, the language used by the Supreme Court in Howard is that the reasonably foreseeable consequence of his actions would be that the firearm would discharge. That language, that reasonably foreseeable consequence, that's Louisiana's version of reckless, right? That is language that is unconcerned with the intent of the defendant, it's an objective standard, it's a reasonable person standard. And so this court can look to Howard and say, that's an actual case from the highest court in Louisiana, interpreting the Louisiana aggravated battery statute in a way that reaches less than intentional conduct. And that's it. That's enough to get through the actual case requirement under Castillo-Rivera. That's the easiest way for this court to affirm. But I want to talk about an alternative way that this court could, not affirm, I'm sorry, to rule in favor of Mr. Surreal. The alternative way is more true to Duanez-Alvarez and Castillo-Rivera. And Judge Smith, I know you were in dissent in Castillo-Rivera, the en banc case that set forth the actual case requirement in this circuit. But what Castillo-Rivera says is that when a defendant proposes a reading of a state statute, right, that he has to also provide an actual case from the state court that interprets that statute in the way the defendant is proposing. Okay? And that's meant to show a realistic probability that the state courts would interpret the statute the way that the defendant's proposing. And it's also meant to prevent legal imagination, where clever defense lawyers come up with a theoretical way a statute could be imposed that's not really grounded in the statute itself. And that's really not what's happening here, right? Mr. Surreal is saying Louisiana aggravated battery can be committed recklessly under Louisiana law. And that's not a hypothetical. Garner tells us from this court that Louisiana has a very unique general intent regime, right, which is different than other states. It's not the model penal code. And Louisiana general intent crimes can be committed recklessly and negligently, because under Louisiana law general intent is not concerned with the intent or mens rea of the defendants, not a subjective standard. And so under Castillo-Rivera, this court can say that Howard's enough without looking at the facts of Howard. Because the Louisiana Supreme Court in Howard is telling us everything we need to know. Louisiana aggravated battery is a general intent crime under Louisiana law. And that general intent crimes can be committed recklessly or negligently, because they're unconcerned with the state of mind of the defendant, and you're looking only to an objective, reasonably foreseeable consequent standard. And so what's happened in the post-Borden, post-Garner cases before this court, and the Portery decision talks about this a lot, right, is there's been some inconsistency in the actual case application, right? And one of the reasons that that is happening is there's a distinction between making the defendant show an actual case that has the legal holding that supports what the defendant's proposing to the court versus what has started to happen with government arguing that I have to find a defendant, right? Like I have to find an actual warm body in Louisiana that was prosecuted on facts that support recklessness. And so a lot of the dispute in Portery is whether the actual facts of N. Ray T.M. or Weatherby or Edwards, like did the defendant in those cases, was their actual conduct reckless? That's where a lot of the Portery decision like rises and falls. And what I'm saying to this court is that's not what Castillo-Rivera requires, right? It doesn't require an actual prosecution. It doesn't require an actual defendant. It requires an actual case where a Louisiana court is supporting the legal proposition made today. And Howard is the highest court in Louisiana saying exactly what we're proposing, which is that Louisiana ag battery can be committed recklessly. So this court can either say the facts of Howard are enough, Mr. Howard was reckless in the way that he held a gun in one hand and grabbed his girlfriend with the other hand, or this court can say it doesn't matter what Mr. Howard himself thought because the Supreme Court and Howard says that this mens rea regime reaches reckless conduct. And the final thing I want to say about this actual case dispute that brings Mr. Surreal before the court is that there will likely be very few Louisiana cases where the facts say that a defendant was reckless. And the reason why is because Louisiana doesn't care about reckless conduct. Every general intent crime in Louisiana, whether it's Louisiana ag battery or domestic abuse battery or assaults, when the courts analyze those cases, our appellate courts and our defendants, because they don't care whether the defendant was reckless, negligent or intentional because it doesn't matter for general intent. So even if defendants say, hey, I only acted recklessly or I only acted negligently, by the time it gets to the appeals court and the decisions that we can see, the judges are unconcerned with that. And the Portery decision acknowledges that problem when they express frustration with the facts of these underlying cases, that it's hard to tell from the facts whether these defendants were reckless or negligent. And that's because these courts are never going to, the word reckless is not really a Louisiana word, right? We use general intent to encompass recklessness. And so those are all reasons that I hope this court looks back at Castillo Rivera, which is the source of the actual case doctrine and looks at Portery and how it applies that and sees that the state v. Howard decision meets any different definition of the actual case that's been used by this court since Castillo Rivera and finds that the district court was incorrect in their decision to classify this as a crime of violence and remand for resentencing because Mr. Surreal's guideline range is three years lower. It's significantly lower than the guideline range with the crime of violence. And so... What do you do with the fact that this case is plain error review? So that means Mr. Surreal has jumped through some extra hurdles, right? So, so state, United States v. Garner, this court's decision and the Supreme Court decision in Howard, that's the, that's the clear and obvious error, right? Those are two clear and obvious cases that existed before this happened that say that this is a reckless crime. So that's the clear and obvious error. Then Mr. Surreal has approved a violation of his substantial rights. And Melina Martinez tells us that when a guideline range is incorrect and the defendant receives a sentence in the higher guideline range, that this court should presume that that is, that affects his substantial rights, absent some other showing that he would receive the same sentence otherwise. So that's the third prong, right? The fourth prong is, is, you know, the fairness and integrity of this court. And Rosalie Morales from the Supreme Court tells us that ordinarily, if someone's guidelines are incorrect and they could, and their guidelines would be lower with the correction, that generally this court should exercise its discretion. I know all about that case because it reversed one of mine, as you remember. That's correct, Your Honor. And so, but, but, but in any event, you know, that's the showing that has to be made. And Mr. Surreal, I think, has made that showing because he, the bottom of his range would be three years lower than his current sentence now. Thank you, Your Honors. All right. Thank you, Mr. Talbot. You've saved time for rebuttal. Ms. McCoy. Good morning, Your Honors. May it please the Court. My name is Robin McCoy, and I represent the United States of America in this matter. Today, Your Honors, the government asked this court to affirm Mr. Surreal's conviction and sentencing from the district court below because, as Judge Smith has noted, we are under plain error review. Mr. Surreal cannot prevail under plain error review. He cannot establish that there was an error. He cannot establish that that error was clear or obvious, nor can he establish that it affected his rights. So to jump right into error, as this court knows, plain error is a very demanding standard. It's very difficult for Mr. Surreal to succeed upon. The error here that Mr. Surreal claims happened is when the district court classified his Louisiana aggravated battery from 1998 as a crime of violence under Section 4B1.2a. And as this court knows, the definition of that is an offense that has as an element the use, attempted use, or threatened use as a force against the person of another. In briefing, Mr. Surreal has argued that Borden and Garner compel the conclusion that Louisiana aggravated battery categorically cannot be a crime of violence. And, Your Honors, today opposing counsel has built upon that premise by citing Portery. But that's not what those cases... You're relying very heavily on the Howard case. Yes, Your Honor. Absolutely. And I would like to discuss Howard because opposing counsel was correct that it may not have been raised in the briefing in Portery, but it was certainly argued before the Portery panel. Judge Duncan and opposing counsel had a lengthy discussion on the record in the Portery oral argument about the Howard case. And despite being presented in oral argument with Howard as an actual case that would establish this premise that Louisiana aggravated battery includes or encompasses in its convicting defendants for recklessness and negligence, despite being presented with that direct proposition, Portery implicitly rejected it because it did not find that it was an actual case when the Portery opinion was rendered. If the Portery panel found State v. Howard was what opposing counsel represents it to be, then it would have found that in the opinion. And it's not there. And that's because Howard does not stand for that proposition. Instead, Your Honors, what the Howard court found was based on Louisiana aggravated battery. It was not a case that was based on Louisiana aggravated battery. It was not based on the discharge of the gun. So opposing counsel is correct on the basis of the facts from Howard. Mr. Howard confronted his girlfriend in a vehicle. He tried to pull her out. He had a gun in one hand and he reached in, grabbed her by the shoulders in an attempt to forcefully pull her out. At that point, she jerks back and the gun goes off and she's shot in the neck. The shooting of the victim, the discharge of the gun was not material to the conviction. So it seems to me, I'm not trying to put words in your mouth, but it seems to me that you're going on the second prong, which is that Howard was not close enough on point that the error was plain. It could still be an error, but it wasn't plain under the plain error standard. I certainly agree that it was not clear or obvious error, but I also would argue it's not error at all. Howard does not stand for the proposition that Louisiana courts are convicting defendants of Louisiana aggravated battery based on recklessness or negligence. My question, though, went to, we don't have to decide prong one if you satisfy prong two. Certainly. It's within this court's discretion to skip over prong one of error and just head straight to prong two, which is clear or obvious. And as this court knows, clear or obvious cannot rely on the extension of precedent. It can't exist in the absence of binding precedent. It can't exist, as the Supreme Court has said, when there's reasonable debate about what's going on in the state of the law. So under no set of circumstances is an error in this case if that occurred. That wasn't clear or obvious, because even Forbido and Portery disagree on what Garner means, and it disagrees on how far Garner can be extended, and it disagrees on what Garner compels future courts to hold, whether that is as to one singular statute or whether that's to the entire regime of Louisiana criminal law. And because there is not a clear standard, it can't be clear or obvious, your honors. To your point, Judge Smith, even if Mr. Surreal could establish an actual case, which for the reasons discussed, he can't prevail on that, even if he could get over the clear and obvious hurdle, he still cannot prevail on prong three, which is that it affected his rights. Mr. Surreal has to show that there's a reasonable probability that but for this clear or obvious error, he would have received a lesser sentence. Oftentimes the court looks to see, was the record silent? Here, the record was not silent. This sentence of 120 months was supported by the record, your honors. And as this court held in Greer, there's no magic language or talismanic language that's required for the district court to say. Instead, we look at the record as a whole, and we can infer from the language the district court used whether the sentence was ultimately supported. And in this case, the district court specifically said he was giving a 120-month sentence based on the factors contained in 3553A, including the defendant's criminal history, his personal characteristics, and his role in the offense. And those factors are supported by specific findings throughout the sentencing hearing. Twice during the hearing, the district court reviewed Mr. Surreal's criminal history. Twice the district court noted Mr. Surreal was a criminal history category 5. That's pages 96 and 126 of the record. And in fact, the district court had to review Mr. Surreal's criminal history to address an objection to the computation of the criminal history points. The district court then, in response to a different objection, reviewed the entire factual basis, and he read it into the record. That discussed the search warrant that was executed at Mr. Surreal's house based on drug trafficking. It discussed the drugs that were found, nearly 50 grams of crack, or 50 grams of cocaine. It discussed the paraphernalia that was found. It discussed the gun, where the gun was found, a magazine that was found, and ammunition that was found. That was the factual basis. So the judge read that entire thing into the record, and that's at pages 118 and 119 of the record. But that's not all he did. He made a separate finding that the gun was found in close proximity to the drugs to support the four-level enhancement for the gun being used in connection with another felony offense. That was pages 120 and 121 of the record. He then discussed, based on his findings, that he believed Mr. Surreal was involved in the manufacture of crack cocaine, based on the implements that were found in the kitchen and the fact that Mr. Surreal was converting the powder into crack form in the kitchen of his residence. That's page 119 of the record. And then the district court made a specific finding on pages 120 and 121 of the record that Mr. Surreal was engaged in drug trafficking and he was engaged in the manufacture of crack cocaine. Those are the findings that, when you look at it as a whole, very clearly support the 3553A factors that the district court then cited at the end of the hearing. But, Your Honors, in addition to those factors that are memorialized on the record, the district court went a step further. And in the Statement of Reasons, the district court made the statement that it would have imposed the same sentence of 120 months, irrespective of the guideline calculations. The district court could not have been more clear. He supported the sentence under 3553A, and then he supported the sentence in the Statement of Reasons. So the record, Your Honors, is not silent as opposing counsel contends that it is. And for that reason, he cannot show that there is a reasonable probability that his sentence would have been less. And for these reasons, Your Honor, the district court's conviction and sentence below should be affirmed. Because Mr. Surreal cannot establish an error, he cannot establish that an error, if it existed, was clear or obvious for the very reasons we've discussed about Borden and Garner and Portery, in addition to Forbido going a different way and diverging from Portery. And lastly, he cannot establish that any error would have affected his rights, because there is no reasonable probability that he would receive a lesser sentence than he did at the time of sentencing. And for those reasons, Your Honor, the government asks this court to affirm the conviction and the sentence below. I thank you, Ms. McCoy. Mr. Talbot for rebuttal. Thank you, Your Honor. Your Honor, I'd like to start, Judge Smith, with the question you asked about the second prong, which is whether the error is clear or obvious. If the court looks to the Portery decision, Portery was also on plain error. And the Portery panel decided that to get through the clear and obvious part of plain error, it had to review the actual cases and determine whether those cases stood for the proposition that the defendant is proposing. So this court may disagree with the Howard case and the way we're presenting it, but I do think that Portery supports that this court should reach that decision and analyze Howard under the second prong of plain error review. Well, it would be helpful, wouldn't it, for our purposes and I guess for yours, too, in the future to have a published decision that would address this issue. It's kind of unfortunate, I think, that Portery was unpublished. I don't know why they did it that way. I wish I knew as well, because it is certainly a recurring issue on how to analyze the post-Garner general intent crimes in Louisiana. So I wish I knew the answer to that as well, Judge. But that does raise a good point, right? This panel is not bound by Portery, although the decision is meant to be persuasive. And so to the extent that, you know, this panel disagrees with something in Portery, it's allowed to do that. Counsel on the other side cited several parts of the record to show that the defendant's — the outcome would not have — would have been the same regardless or that his substantial rights had not been impacted. What's your best record site to show that his substantial rights were impacted? Thank you for asking that, Judge Douglas. The record at page 132 is where the judge tethers his sentence to the guidelines. The judge explicitly says that this sentence is at the bottom of the guideline range, tethering his ultimate decision, considering all the factors that he had spoke about before, but then he tethers it to 120 months. And he says that that's a guideline sentence, and he actually says it's the bottom of the guidelines. And so the new guideline range, but for this error, doesn't encompass 120 months. It's much lower. The bottom of the new range would be 84 months. And opposing counsel rightly points out that there is a box check on the statement of reasons in this case where the judge checks a box that's a form statement that says I would impose the same sentence regardless of the guideline calculations. And what I would just ask the court to consider when you look at that is there's nothing specific in that statement, right? So this isn't a case where the judge at the sentencing said, counsel, defendant, I would impose the same 120 months even if the guidelines are wrong, and here's why I would do that. Here are the things I've considered outside of the guidelines. This judge didn't make any of those statements at the sentencing. Instead, later on, after the defendant is back at the jail, in a sealed statement of reasons, the judge checked a box that says he would impose the same sentence. And I don't think that's enough under Molina Martinez or Rosalie Morales because ---- What would be the ---- excuse me, I'm interrupting you, but I didn't see you before you ran out of time. What would be the top of the ---- not the bottom, but the top of the correct guideline range, the range that you say is correct? One hundred and four months. I think it's 84 to 104 months. And the sentence was 120? That's correct. Yeah, so the imposed sentence is above the top of the new correct range. Of the correct range. That's correct. And I believe under Rosalie Morales and Molina Martinez that absent of finding that there's some other support in the record that overcomes that, that that generally should be enough for resentencing. And Rosalie Morales tells us that resentencings are not real cumbersome on the district courts enough that it would, that that would be a reason not to impose a resentencing because of the impact of additional three years in prison that it would, you know, impact defendants, especially Mr. Surreal. Thank you for your time, Your Honor. Did you have enough time to do everything on rebuttal that you wanted to? I did, Judge. Thank you. All right. Thank you, Mr. Talbot. Your case is under submission. Remaining case for today, Miller v. Ohio Security Insurance Company.